, the Chapter 7 trustee of the Estate of Bellingham Insurance Agency. Mr. Hallward-Driemeier. Mr. Chief Justice, and may it please the Court, the judgment enforced against EBIA in this case was entered by a non-Article III bankruptcy court pursuant to a statute that this as violating the separation of powers. The entry of a judgment of the United States is not merely a matter of private interest to the litigants. Rather, it carries the force of law that is binding on other courts, binding on the executive branch, which must enforce the judgment, and even binding on the legislature, which cannot reopen the judgment. The entry of final judgment of the United States is the ultimate exercise of the judicial power under Article III, just as the enactment of legislation is the ultimate exercise of the legislative power under Article I. Ginsburg Why should that matter, given that after the bankruptcy judge ruled, the U.S. district court gave de novo review to this case and entered a final judgment that met all the requirements of Article III? The judgment that was entered by the district court was not an exercise of original jurisdiction, but rather appellate jurisdiction. In fact, Section 1334 is clear that it confers the district court original jurisdiction, but once a judgment has been entered by the bankruptcy court, the review by the district court is an exercise of appellate jurisdiction under Section 158. Alito I'm sorry. Here's something that happens every day. A district judge refers to a magistrate judge, a motion for summary judgment. The magistrate judge issues a report and recommendation. The district judge reviews it de novo and may agree or disagree. If it agrees, the district court will enter summary judgment. I don't see a difference, other than a purely semantic difference, between that situation and what happened here. Your Honor, the entry of judgment is the act of the judicial branch that carries the force of law. The issuance of a report and recommendation by a magistrate does not. It's only after the exercise of judgment and the entry of judgment that it has binding effect, binding on the other branches. Sotomayor Are you talking about a mere formality? Are you arguing that because it was the bankruptcy judge and not the district court judge who signed the final judgment that that makes a difference? Yes, Your Honor. That's the essence of your argument. Yes, Your Honor. Because the act of entry of judgment is not mere formality. So if we vacated and remanded and the district court looked at this, because it's already seen it, and basically just signed below the line that the bankruptcy judge signed, you would be okay? Yes, Your Honor. But the act of entering judgment is, both as a legal matter and as a practical matter, different from the appellate, exercise of appellate jurisdiction. The act of entering judgment, the district court must, if it is the one entering the judgment, has to determine that judgment is properly entered. It's a proper exercise of the appellate, of the Article III power. The district court would have the discretion under Ninth Circuit law, consistent with Anderson v. Liberty lobby, to carry a motion for summary judgment to allow the record to develop further. That option, available to the district court when it's sitting as a matter of original jurisdiction, is not available to the district court sitting on a keel. It reviewed this case de novo. That's true. And it decided that there were no issues, no factual issues in dispute, and that the law clearly applied the way it did. I don't understand why that option was taken away from it on appellate review. On appellate review, it had two options, affirm or reverse. As an original matter, though, it would have had a third option, which would have been to deny the motion at that time to let the record develop more fully.  How would the district judge do that when the district court said there are no disputed issues, no relevant disputed issues of fact, and this is a pure legal question? Well, Your Honor, I truly believe that on this record, where there clearly were disputes between the two affidavits, that an Article III judge would not have entered summary judgment as an original matter. Sitting as an appellate court where its decision was going to be subject to appellate review immediately, perhaps its analysis was different. But I think more fundamentally, the absence of a judgment entered by a court with authority to do so means that the appellate court also lacks appellate jurisdiction. And this Court has so recognized in Archer-Colliery's, in the Glidden case, and in a number of cases. Kennedy, so far as you know, by your friends on the other side, that this was appellate? Well, I don't know. What is it that makes it appellate? Well, Section 158A speaks in language of the district court exercising appellate jurisdiction. It uses the word jurisdiction. So once the — in 157B, a core matter such as this, the bankruptcy court is delegated authority to hear and determine and enter final judgment subject to review pursuant to Section 158. Section 158A specifies that the district court is exercising appellate jurisdiction in that event. So the district court does not — It uses the word appellate? It uses — 158? Yes. 158A says — Which is where? Where are you reading from? I'm using the government's amicus brief, the statutory appendix that's on page 4A. I don't know why it wasn't in your brief. It is in our brief. The reason I cite to the government's brief is it also has 1334. It's slightly more comprehensive. So on page 4A of the government statutory appendix, Section 158A, the district This Court has in numerous decisions attributed significance to Congress's use of the word jurisdiction, that Congress knows what the word means and when it uses that word it means it is jurisdictional. The Section 1334, on the other hand, which is on page 14A of the government's original, but not exclusive, jurisdiction of all civil proceedings arising under Title XI. So the district court does have original jurisdiction at the outset, but when it has referred the matter to the bankruptcy court and the bankruptcy court has entered final judgment, then pursuant to 157B and pursuant to 158A, the district court is now exercising appellate jurisdiction. Breyer. I want you to get on a bit, because I'd say the question that were, at least for me, is one of congressional intent, not in necessarily your case, but in future cases. And the argument is that the statute can be read, it silences, to say if Congress wanted to allow people in non-core cases to submit reports and recommendations they surely would have wanted it in what they thought was a core case and turned out to be non-core. So I want your response to that, and I would couple that with my own research for an opinion when I was on the First Circuit about the fraudulent conveyances, and they're about bankruptcy. I grant you that there is a statute of Elizabeth that's a legal matter for several hundred years, but the person who is defrauded, the people defrauded are the creditors, and in most instances, the fraud consists of transferring property to a friend rather than a creditor where you know you are insolvent. Now, that is a legal matter, but it is about bankruptcy. And it's State law, but it is about bankruptcy. And it is, according to you, I may not agree with that, but I think we have to take it as non-core, but why wouldn't Congress have, of course, wanted reports and recommendations if they couldn't get what they really wanted, which is to have the bankruptcy judge decide? To be clear, Congress designated fraudulent conveyance actions as core. I know that, and I would have said they were right, but nonetheless, I am faced with case law that says to the contrary. Okay. So my question is, if they couldn't get, if they couldn't get, what does that mean that they wanted, which is to have the bankruptcy judge decide it, why wouldn't they at least have wanted the bankruptcy judge to write a report and recommendations and send it on to the district judge so he can review it, de novo? I think that what's constraining the Court is the language that Congress enacted. Congress found an ambiguity in that language, then you would say I would be sensible to read it contrary to what you want. Well, I don't believe there is an ambiguity, Your Honor, because Okay. I got that point. One is you say it's totally unambiguous, you can't do anything about it. But if, in my opinion, it is, I take it as a hypothetical, it's ambiguous enough to get what Congress wanted. Now, you, can you give me any argument against what I just said? What is the ambiguity we're talking about? Well, the ambiguity, or I actually think there's no ambiguity because it goes away. What is the non-ambiguity we're talking about? Congress very clearly distinguished a dichotomy between those cases in which the bankruptcy courts were to issue proposed findings and conclusions and those that it was to hear and determine. The cases that bankruptcy courts were to hear and determine were cases in which the bankruptcy courts were to enter final judgment subject only to appellate review on 158. Now, my question is, I want you to assume that the language is at least somewhat ambiguous. And on that assumption, is there any reason not to adopt the government's position? There are several, Your Honor. And part of the problem is that the question of how to construe that language in 157b does not only affect how Stern claims are going to be handled, but also all other claims under 157b. Congress very clearly wanted an efficient system in which bankruptcy judges would enter judgment and there would be only appellate review by the district courts. If the Court reads 157b's hear and determine language to also encompass the authority to issue non-final reports and recommendations, that would not be limited to the class of cases covered by Stern that are core, but not. But why would we have to do that, Mr. Hallwood-Driemeier? Why couldn't we say that this presents a distinct problem, these Stern-type claims, and it's really a problem of severability, and that we should understand this statute in light of Stern as essentially creating this middle category which Congress clearly meant to have the treatment that the non-core claims get? It's unfortunately, the statutory language does not admit of severance of the kind that Respondents suggest, and that's because fraudulent conveyance actions are core not simply because they're listed in 157b2h, but because they are proceedings that arise under Title XI. That's the definition of core proceedings. And so even if the Court were to line out. Ginsburg-Miller The definition was linked to a purpose. You laid out very nicely the two categories, the one category where the bankruptcy judge enters a judgment, the other category where the bankruptcy judge makes recommendations. So if you the purpose of the classification was to indicate the bankruptcy judge can make a final judgment, can only make recommendations. Suppose the district judge had said, I'm uncertain, after Stern, about whether the bankruptcy judge had authority to enter a final judgment, so I am going to treat that summary judgment as a recommendation. I'll treat it as a recommendation, and I will review it de novo. I agree. I enter final judgment. If the district judge had said that, then you would have no case, right? I don't think that 157b envisions that the district court could do that. The district court's review of a judgment entered under 157b is on appeal pursuant to 158, which is an exercise of appellate jurisdiction, not original jurisdiction. Scalia And if we believe that the word determine means make a final judgment, which you assert it means so that there's no ambiguity, it seems to me you have a statute in which the bankruptcy judge is only authorized to make recommendations in some situations and to make final judgments in others. And surely there's a problem with the district judge altering that disposition by just saying, oh, I know you're supposed to make a final determination, but just for fun, give me a recommendation. I mean, that is contrary to the statute. That's clearly not what Congress provided. It had different. Congress might have provided that if it had known about Stern, right? That's true. Do we sit here to write the statutes that Congress would have written? If they knew about some future events, I don't think so. And, in fact, there are a number of others. Kagan Well, we did provide, though, again, to apply severability principles to write the statute that Congress would have written if it had known about a constitutional ruling, and that's essentially what Justice Breyer is suggesting. I think, Your Honor, there are two problems with that. First is that by changing the definition of core proceedings, there are other collateral consequences for other provisions of the Code. Under Section 1334C, for example, there's an abstention in certain non-core proceedings. And so Congress has defined the scope of the abstention according to the same language that it uses in 157B, whether a proceeding arises under Title XI or does not do so but is merely in relation to a case under Title XI. So if the Court goes and revises what Congress has provided as the definition of core in 157B, there will be collateral consequences for other statutes that Congress had enacted. But the second point is that there are, as I think Justice Scalia was suggesting, policy decisions that really only Congress can make in deciding how to respond to Stern. Because one can compare, for example, the provisions of 157C1, which is the bankruptcy judge issuing a proposed findings and conclusions, and the Magistrates Act 636. The two are actually quite different. The magistrates, for example, are assigned a specific motion to consider and issue a report and recommendation on. By contrast, the bankruptcy court in C1 exercises jurisdiction over the entire proceeding, including up to conducting a trial in something that isn't subject to jury trial, and then issuing a report and recommendation to the court. Scalia. None of that is involved in this case. We have this case in front of us. We don't have every other possible case that could implicate this issue. We have one case, and it involves summary judgment. And so there isn't — there are no findings of fact, and there is no substantive difference between a district court's reviewing a report and recommendation on summary judgment and what happened here. I have heard nothing other than formalities. But the formalities matter. Alito, why do they matter for Article III? Maybe they matter for statutory reasons. Why do they matter for Article III? What your client got was exactly, substantively exactly what your client would have gotten had this been referred to a magistrate judge for a report and recommendation. Well, to begin, I think the formalities do matter. And not only do I think so, this Court has repeatedly said that the absence of a judgment entered with authority means the absence of appellate jurisdiction as well. And all the appellate court can do is to vacate and remand. Scalia, is Article III not violated so long as the parties are happy? No, Your Honor. Can the parties agree to have a — an Article III court decide a case that it has no jurisdiction to decide, and so long as no harm is done to the parties, it's okay? Quite the contrary, Your Honor. The Court has repeatedly stressed that the parties may not, by their agreement, confer jurisdiction that would not otherwise exist. There were two aspects to the Article III problem. One affects the individuals, and it's an unfairness, and the other is structural, as Justice Scalia said. But both are at issue. And so where you have only a structural issue, and it's a question of getting the bankruptcy courts to work, and nobody's hurt by it, doesn't that at least cut in favor of interpreting a statute to prevent chaos — not chaos, that's too strong — but to prevent, to allow the function of the court to work better? To the contrary, Your Honor. Ensure the Court made clear that where the structural features of the Constitution are at issue, that is precisely where parties cannot be dependent upon to assert the interest, and it cannot be cured by consent. And here we have an example. The constitutional violation identified by the Court in Stern existed for 25 years before the issue finally made it to this Court, in part because parties were reluctant to assert that issue before a bankruptcy court in which its fate held. The issues here, the other side says there is no structural problem because there's no aggrandizement or encroachment. But to the contrary, Congress has reserved to itself power over bankruptcy judges that the Constitution denies it over Article III judges. The President's power to appoint has been encroached upon. Kagan. Well, couldn't you say the same thing once again about magistrates, the exact same arguments would apply to them? I think in large part they do, although there is a distinction, perhaps an important distinction, that in the Magistrates Act, the consent requirement is built into the statute. Well, I don't see why that would make a difference if you say the problem is congressional aggrandizement or congressional encroachment of a certain kind. It doesn't seem to me to make any difference in that case if Congress says, by the way, you can consent to it. You're absolutely right, Your Honor. And I think that the problem that this Court identified in Stern and that we identify here applies equally to the magistrates. But we have explained that that argument, even if not accepted in full, would distinguish our case from the Magistrates Act, because here the act enacted by Congress was unconstitutional. It assigned, irregardless of consent, this action to determination and final judgment by a bankruptcy judge. The Court considered the statute and held it unconstitutional in Stern. So if consent were to cure the problem here, then the jurisdiction of the Court would depend solely on the consent of the parties. If, on the other hand, the Court was considering in the first instance whether consent, as a limiting feature on the jurisdiction of the non-Article III body, meant that there was not the types of structural problems that the Court identified in Stern, then it would be as part of the determination whether there was or was not an Article III violation in the first instance. Alitoson, I ask you to clarify what you're saying about the constitutionality of the Magistrates Act. Are you saying that it is unconstitutional insofar as it allows magistrate judges to try matters by consent, or are you saying further that it is unconstitutional insofar as it allows a district judge to refer a dispositive matter to a magistrate judge for a report and recommendation subject to de novo review or both? Only the former, Your Honor. It's only the former. But the former is not implicated in this case. That's right. I was just answering the question about the logic of the argument and how far it went. And I guess, again, what we suggest is that there might be a distinction when the Court is considering a statute and, as Schor lays out, the many factors that the Court might consider, the fact that consent is a limiting feature on the non-Article III body's jurisdiction might lead the Court to conclude there was no Article III violation. But here, where there was no consent in the statute, the Court has already held in Stern that there was an Article III violation. The statute does not constitutionally confer jurisdiction on the bankruptcy courts. So if there is jurisdiction here, it would be purely a matter of private party consent. And that's precisely what the Court has held is not permissible as a matter of jurisdiction. Sotomayor, are you saying, contrary to our case law, that you can never have implied consent? We have held differently in other cases. I'm not arguing that there cannot be implied consent. But in Rowell, as a construction of the Magistrate's Act, the Court held that consent must be knowing and voluntary. There, of course, the litigant had notice, because the statute had advised the litigant that it had the right to refuse consent. Scalia You're confusing me. I thought you did say that there can't be implied consent or even express consent to what happened here. Isn't that your position? I'm sorry. I was thought I was answering a different question. In our view, consent cannot be the basis for the exercise of jurisdiction by a non-Article III court. Express or implied. Express or implied. That's right, Your Honor. So this is the subsidiary argument, our really fallback argument, which is to say, even if consent could play a role, it would only be where that was part of the statute and thus part of the Court's analysis of whether the statute is constitutional. I'm sorry, Your Honor. Sotomayor Let's just save your time. I'll ask how we got here. So there were two cases that the other side had cited, Rowell and McDonnell for that point, but in each case, the statute itself featured consent as a limiting feature on the non-Article III court's authority. If there are no further questions, I'll reserve the balance of my time. Thank you, counsel. Mr. Pato. Thank you, Mr. Chief Justice, and may it please the Court. Justice Alito is entirely correct. For the reason we can win the most straightforward way is because he got everything he wanted in the courts below. And I would like to also address Justice Ginsburg's question about what could have happened in the hypothetical situation. But if I may begin, please, I'd like to address Justice Scalia's point about where is the ambiguity in the statute. And unfortunately, my friend and I disagree, because I think the statute under 157b1 is unambiguous in my favor. So if I could take you back to the statute, and I'll use the Solicitor General's convenience, 157b1 is the provision by which district courts, if they want to, there's no compulsion on these Article III officers, if they want to, they can refer matters to bankruptcy judges, and it says when there is a matter referred that they may hear and determine the matter and may enter an order or judgment. My interpretation, I believe, is the more natural one of may enter an order or judgment. It's a permissive grant of authority. There's no compulsion to enter an order and judgment. They can simply hear and determine the matter and not enter an order and judgment. And I can contrast this textual language, you don't have to go very far, down in C1 and C2, where C2 there was only one may, they don't have the double may permissive grant of authority. And there's — and in the noncore matters, there's a — it shall, it shall determine. They use the verb shall in C2. So I think that B1, with two uses of may, is very clear that when a matter is referred under B1, they may enter an order of judgment, but don't have to enter an order of judgment. And I think that gets us around his difficulty. Kennedy. Does that bear on the question whether this is appellate? Do you agree that this is appellate once the district judge, the district court has the matter in front of them? So if there is a judgment, I would concede that we then have an appeal that occurs, Justice Kennedy. But what is critically important, why I think that doesn't create a problem. Kennedy. If there is a judgment in the bankruptcy court, you would concede there is an appeal to the district court? If there is a — so, for example, under a noncore proceeding — I'm sorry, in a core proceeding where there would be a judgment in the bankruptcy court, I would concede that that would be an appellate matter before the district court, if there was a full judgment. Scalia. Would you be wrong one to read that when a district judge refers the matter to a bankruptcy judge to hear and determine and to enter an appropriate order, the bankruptcy judge can say, you know, I'm just too busy? No, no. I'm on Easter vacation, and I may hear and determine it, and I may enter appropriate orders, but I don't feel like it. No. The may prerogative, Justice Scalia, is with the district court. The district court may refer to it and may refer to a final judgment or may not. But it doesn't say that it may refer. It says bankruptcy judges may hear and determine. At the instruction of the district judge. I don't believe the bankruptcy judge has the authority to feel lazy or disinclined. How do you bring the may over to the district court? In the order of reference, so we have to go back to 157A, which is what starts with the whole reference of cases from district courts. Recall that a bankruptcy court is a unit of the district court. So as an institutional matter, it's the district court that exercises jurisdiction. Under 1334, the Federal subject matter jurisdiction of bankruptcy is vested in the district court. Now, as a matter of which officer. Scalia, then the may that you're concerned with is the may in A, not the may in B. I use both of those mays, if I may, Justice Scalia. And I think that the revision post-Stern of many district courts, the government puts forward an appendix of how these courts have changed their orders of references, have explicitly used this power. And they say, for matters in which we refer a statutorily core proceeding, but there is a Stern claim that arises. So when we refer a claim and you think that Article III presents a problem, we do not want you to enter a final judgment. On those referred proceedings, we only want you to enter a report and recommendation. So the district courts below are working this out by changing their orders of references and not having them enter judgment. Scalia, and what the other side says is that's very nice, but that's not what the statute says. The statute does not give the bankruptcy court the authority to enter a simply recommendation for what has been defined as a core proceeding. For core proceedings, what the statute says is you'll determine it. And you're saying, well, it says that, but since it's been held unconstitutional, we're going to shift this over to the category in which they can issue an order and recommendation. Where does that come from? I think it has to come from a textual disagreement with my friend. He says the phrase, may hear and determine, should be read to mean, must determine and enter a final judgment. And I think the textual phrase, may hear and determine, and may enter an order or judgment, suggests that they, if referred to by the district court, may enter a judgment. No, that's not my problem. My problem is not why they don't have to enter an order and judgment. My problem is why they are authorized to issue a recommendation. Oh, because I don't think that's where does that come from? They are not authorized to issue recommendations for core proceedings. I see. I don't believe, Justice Scalia, that the issuance of a report is a matter of such significance that there would need to be an explicit reference to what, issuing a report, a judgment. If you contrast Section 157 and 158. Oh, really? I mean, can a district judge sort of, you know, it's not terribly important because it's just a recommendation. So I'm going to refer it to my former partner, you know, my former law partner. Of course you can. But with the consent of the parties? Yes, even with the consent of the parties. That would be a special master situation, I think, Justice Scalia. If they referred and the district court, yes, the district court would have inherent authority to refer an issue to a special master. To a special master. Yes. It has statutory authority to do that. There is no statutory authority here to refer a matter to a bankruptcy judge for nothing other than a recommendation except for non-core matters. And our position would be that the issuance of a report does not require a statutory authorization the way the entry of a judgment requires a statutory authorization. So the contrasting treatment under 157C of non-core matters is very different. You're saying basically, I think, the words are, for core proceedings, it gives the power to the bankruptcy judge to hear and determine. Yes. If I tell the assistant chef, you deal with orders for bacon and eggs, that might mean that the assistant chef can deal with eggs orders alone, or it might mean only those that order both. That's why I thought perhaps it's ambiguous. Yes. And if there's a further, Justice Breyer, if there's a successive may afterwards after the bacon and eggs and may prepare a dessert as well, that's even more permissive. So it can do that for those core proceedings that were not held unconstitutional under Stern, right? Yes. And that was the practice. It can just refer them and say, just give me the eggs. Yes, that's right. I don't need the bacon. And that was the practice. You don't have to determine it. Just give me a recommendation. Yes. And that was the practice even before Stern. Some courts did that. They had them just refer on straight-up core claims to give the reports and recommendations. There's a case out of the Tennessee Court of Appeals. It seems to me the dichotomy set forth in the statute disappears once you say here and determine means either here and determine or here or determine. But I don't think the whole dichotomy of the statute is the same. Justice Scalia, I don't think it's a dichotomy. I think that what they're worried about, I believe what the Congress is worried about, is by putting express constraints on the entry of a judgment. For precisely the reason Mr. Howard-Dremeier says that judgments are a matter of some at least formalistic significance, that they put a constraint on what you can do regarding entry of a judgment. Sotomayor, can I go to that for a second, because let's deal with statutory language, okay? I get the core of your argument to be as follows, pardon the pun, that for statutorily core proceedings that constitutionally are not core, we should treat them as non-core proceedings. Am I at your point? Yes, but I want to be clear. I'm not shoehorning them into the category of non-core. I'm saying we should accord them the same treatment that is accorded to non-core proceedings. Sotomayor, so if we're going to accord them the same treatment, what do I do with Federal Rules of Bankruptcy Procedure 7012, which explicitly states, quote, in non-core proceedings, final orders and judgments shall not be entered on the bankruptcy judge's order except with the, quote, express consent of the parties. So now you're telling me we're going to have a third category. It makes very little sense to me, okay, which is you need express consent for a magistrate judge to issue a final judgment in a non-core proceeding, but you can have express or implied consent to enter the final judgment in core proceedings. That makes very little sense. I understand treating it like non-core proceeding, but if we're going to treat it that way, then I think you have to treat it that way for all purposes, not pick and choose the ones you want. First of all, I'd like to give you some hope, Justice Sotomayor, which is there are amendments to Rule 7012 that's percolating up to this Court for consideration to address this issue. In the interim, this is what happened in Rowell. In Rowell, we had a rule of procedure that said there must be express consent before there is the trial before a magistrate judge, a civil trial before a magistrate judge, which we do believe is the exact same system as the bankruptcy court judge. And what this Court held was when there's a violation of that rule, right, when there's not express consent, if there is, in fact, true consent based on the conduct, then consent is what matters and it can trump the rule. And that's the square holding of Rowell, so we would argue that it's fair. Sotomayor, the language of Rowell, the magistrate judge's language, didn't use the word the language in Rowell, the magistrate judge's language, didn't use the word express consent. It just, the part, the clerk shall give written notice to the parties of their opportunity to consent to the exercise. So the word express was not in the magistrate judge's act. No, no, no. So in the act, in the statute, there was just a reference to consent, just like we have here in non-core proceedings reference to consent. In the rules. No, here you have to express consent. Yes. In the rules, there is a requirement under bankruptcy for express consent and under Rowell, there was a rule for writing. Got it. Okay, now I understand. May I, if I may, I'd like to go back to the question that Justice Kennedy raised and also back to Justice Alito's and Justice Ginsburg before. What makes this unusual, even if I do concede that it's an exercise of appellate jurisdiction, is unlike all the cases cited when talking about the limited appellate jurisdiction of something like a circuit court of appeals, there's a statutory constraint. A circuit court of appeals can't enter judgment if it wants to, to fix a trial court that forgot to enter judgment. By contrast, district courts in bankruptcy can enter judgments. They have both appellate and original jurisdiction. They can withdraw the reference from a bankruptcy court under 157D, and they can enter judgment. So the Petitioner in this case got everything it wanted. It had an Article III consideration of its fraudulent conveyance defense before Chief Judge Peckman of the Western District of Washington, and they lost. And on page 45A of the PEDAP, you can see that Chief Judge Peckman meticulously spells out her standard of review. She says she spends a whole page on it, saying this is going to be de novo review. And she writes a 12-page opinion with complete de novo review, saying this is why you lose on the State claim, this is why you lose on the Federal claim, this is why you lose on the alter ego claim. And she says there's no genuine issue of material fact that has been submitted on this record. Roberts. You would concede that your case would be you would not have a case if we were dealing with factual findings? Yes, I believe, Mr. Chief Justice, this is a unique factual posture because, otherwise, you can't have de novo review of a fact that there would be a clearly erroneous standard, but that's not what we have here today. And regarding his, my friend's, secondary argument that even if consent is permissible under the Constitution, and with respect, I do believe this Court has held that consent is permissible as a grand constitutional matter. The trilogy of magistrate cases of Peretz and Rowell and Gonzalez make clear that consensual voir dire is okay, and in discussing consensual voir dire, this Court explicitly says, because voir dire is comparable in importance to entry of civil judgment with the consent, which is what magistrate judges can do. So I believe this Court has already blessed the entry of civil judgment by magistrate judges upon the consent of the parties as a constitutional matter. Scalia, I want to go back to your statement that the district court here has both original and appellate jurisdiction because it can recall the reference to the bankruptcy judge. Can it recall the reference after the bankruptcy judge has issued his decision in the case? Has entered judgment in the case? I think that would be — I don't have any case authority for whether they can do that or not, and I share Your Honor's skepticism that that would be — that would create a statutory problem. But the question we have here is whether there's an article — even if we concede a statutory violation, which I don't, by the way, I think that this is — it's very clear that there was consent of the parties, that they went before the bankruptcy judge, and he went in with wide eyes, with wide open. So I'm spending all this time talking about a backup argument as to if we assume arguendo that the bankruptcy judgment was illegitimate, we still win. And that's why I said it's the most straightforward way to resolve this case. If it was illegitimate, we still win because of the de novo review. My friend tries to disparage Chief Judge Peckman and say, well, it wasn't really de novo because even though she spent a page saying I'm doing a de novo review, I found the words substantial and evidence juxtaposed on page 50A of the Pet Act. And I don't think that's a fair reading of her opinion. I think if you read her analysis, it's quite de novo. She goes through all the evidence that's submitted and says no genuine issue of material fact, judgment is a matter of law. Ginsburg. But she did say that EBIA had the burden to demonstrate error in the bankruptcy courts. She does say that at one point in her opinion, but I believe if we read the analysis in its context, it is clear that she's according a full de novo review of the claims. And I think that — I don't think she misunderstood the standard of review that should be done and the true de novo nature of it. But if I may, I'd like to comment on my friend's backup argument. If the Court agrees with me that Article III is not imperiled by consensual adjudicative regimes like the magistrate, civil judgments, and the bankruptcy court, non-core proceedings, which, by the way, I would like to remind the Court that in Stern itself you did quote section 157c2, which is the non-core consensual proceedings, in an opinion exclusively devoted to Article III, my friend says, well, as a backup, even if that's constitutionally okay, I have to have notice that I can withhold my consent. And under the statute, it's clear that on a non-core claim under 157c2, the parties have to consent. And he says, but I had a Stern claim, so I didn't really know that I was a non-core claim and could withhold my consent. So it's a one-off quirky argument he's making because he had a Stern claim before Stern. And that's belied, sir. Robertson, I'm sorry. Go ahead. Well, I was going to say, that's belied by the pleadings. In his answer to this complaint, which is at page 80 of the Joint Appendix on the jurisdictional allegations of the trustee, this is a core proceeding, he says, denied. So he thought he had a non-core proceeding. Robertson, you're right, we've been talking about backup arguments to backup arguments. Your central argument is that the consent of the parties can overcome what Stern identified as a structural separation of powers problem. I would – I would slightly rephrase that, Mr. Chief Justice, and say what Stern defined as the problem was the adjudication of the private right without the consent of the parties. So I think it's already intrinsic in how Stern thought about it. Well, I guess that's my question. Is there any other case where we've said the consent of the parties can overcome a constitutional structural separation of powers problem? Well, in the Hecker's case, which we cited earlier, the old special master's case, that's what happened. There was a reference out to a referee. And when there's – it's a two-part thing, Mr. Chief Justice. It's not just the consent of the parties, remember. It's the referral by the district court. So if the district court feels that its Article III authority is being impinged upon, it has no obligation to refer matters out to a bankruptcy judge. The parties can't say we consent, we want to go to the bankruptcy judge. We've already told the district court, haven't we, that its Article III status is infringed when he refers or when there's a reference to a non-Article III tribunal? No. That's why I said I think it's two necessary conditions. I think there has to be both district court permission to grant the reference out and the consent of the parties. Okay? So if the district court refers the case to his law partners, and that's fine with the parties, that law partner can enter a final judgment in the case subject only to appellate review? That's what Hecker said. That's what Hecker said, and that's basically what's going on. Is that what you're saying? Yes, that's a special master. That's what a special master is. The special masters do not enter final judgment subject only to appellate review. Well, technically, if we want to go to the procedure of what these equity officers did was they would prepare their report, and because they're acting as officers of the court, and then the clerk of court enters judgment. So the adjudicative thinking there. But the appellate review is the important thing. The Article III court, under your submission, is giving up its authority to enter factual findings. It's giving that authority to a non-Article III tribunal, and it can only review those findings under the clearly erroneous standard. That is the current system of the magistrate judges under 636. Well, I know it's the current system under the magistrate judges. We held that unconstitutional in the bankruptcy context. No, you held it unconstitutional regarding an objecting defendant. There's been hundreds of years of consensual adjudication with these inferior judicial officers, as they were called in the earlier cases, such as Gobart. They are officers, they're inferior judicial officers, and they're controlled by the Article III judiciary. The Article III judiciary retains the control to use them or not use them as they want, and parties can't be forced to do them without their consent. So when this Court has had opportunity to address Article III concerns of this, they have always relied upon the lack of consent as a problem. And that's why this Court's formulation in Stern, I think, is critical, just following Union, Carbide, and, indeed, every opinion in Northern Pipeline, going back to the McDonald case under the old Act. What matters is the lack of consent. Plenary matters can't be tried without consent under the old Bankruptcy Act. When there is consent, this Court held in McDonald, that's fine. Indeed, when there's implied consent, this Court held in Klein v. Baker in the American College's amicus brief, that's fine. And as the American College also lays out well, these old statutory cases under the old Bankruptcy Act were interpreted with constitutional values in mind. The old Act was very cryptically drafted and tersely drafted, so this Court used constitutional principles in interpreting the scope of the old Bankruptcy Act and upholding the consensual adjudication of plenary matters when there is consent. So our submission, Mr. Chief Justice, is yes, we do think that the consent matters. And the final thing I'd like to say is my friend passed this narrative. He said, well, how do you know I consented through my implied conduct to the non-core claim? And remember, he did plead it was non-core in his answer. And my red light is that his co-defendant won before the very same bankruptcy judge. So he made a tactical decision. He's trying us to second-guess ex post now that he's lost. Thank you, counsel. Mr. Gannon. Mr. Chief Justice, and may it please the Court. We believe that a party may consent to have a fraudulent conveyance claim determined by a bankruptcy judge. And even in the absence of consent, principles of severability justify treating such an action as a non-core proceeding in which a bankruptcy judge may enter proposed findings of fact at conclusions of law. There's also one other aspect of our argument that has not yet been mentioned this morning, which is that we think that even if consent is not adequate to cure the constitutional violation or if you find that there is not adequate consent on this record, we think that it would still be open to you to find that Petitioner has forfeited this constitutional argument. Constitutional arguments can be forfeited. He has not — he did not advance this argument at any point, any reasonable point before the bankruptcy judge, before the district judge, until he is before the court of appeals. Indeed, I think it's telling that this Court had already granted certiorari in Stern and had already heard oral argument in Stern before the district court even ruled on the motion for summary judgment. Breyer, this is true, but if you were in the Ninth Circuit and I would have — you would have thought this was a core proceeding. You might have thought the same thing. So he says, you know, of course I didn't object. I'm faced with all kinds of precedent that say it's impossible. Well, I — And therefore, there's no reason to object. Well, futility — That wasn't consent. If there was true futility, and I'm not talking about the consent argument now, Justice Breyer. No. I'm talking about a forfeiture argument for purposes of preserving an argument on appeal. And if it were truly futile, I think that a court of appeals could overlook that type of forfeiture. I don't think that it was futile here. I think that's demonstrated by the fact that Stern itself came out of the Ninth Circuit. The litigants there were making those arguments. And indeed, the healthcentral.com case the Petitioner relies upon just had a discussion of the Seventh Amendment. I don't think it clearly foreclosed this claim for purposes of the constitutional argument. And the answer suggested it because he was claiming the fraudulent conveyance claim, and his answer was noncore. So he had the basis of the argument. Yes. I think it's — he certainly did, as my colleague already pointed out, on page 80 of the Joint Appendix in paragraph 2.1 of the answer, denied the allegation that this was a core proceeding. And if you look then to 157C1 and 2, the statute made consent relevant at that point. And Rule 7012, which, Justice Sotomayor, you were earlier quoting, made it clear that he was obliged then to — or Petitioner was obliged then to give consent or not. But if I can turn to the severability question, which was also the focus of a lot of the argument before. Justice Scalia, you pointed out that Congress can rewrite the statute the way it wants to. And that's, of course, true. But it is always the case when this Court gets to a severability analysis that Congress didn't get its first option. Here, Congress did include a severability clause in the 1984 Act. It's in Section 119. And it says if any provision of this statute or any application thereof is held to be unconstitutional, we want the rest to stand. And we think that's what I thought severability was. If you find part of it unconstitutional, you ask whether what is left can stand. And you don't say that we're going to rewrite what is left. I don't think any rewriting is required here, Mr. Chief Justice. And I think that this is actually, essentially, what the Court has already said in Stern. In Stern, on page 2620, this Court characterized the effect of its decision as being, quote, the removal of Vicki's counterclaim there from core bankruptcy jurisdiction. And the consequence of that is that because the Congress had divided the world into core and non-core proceedings in the wake of Northern Pipeline, thinking that the distinction between them was core proceedings for ones in which bankruptcy judges would have authority, constitutional authority to enter final judgments, non-core proceedings for ones in which they could not do that without consent, or they would only be able to provide proposed findings of fact and conclusions of law. And in the same paragraph where this Court noted that the effect of its decision was effectively to remove this, that type of counterclaim from core jurisdiction, it said that it did not expect that this decision would meaningfully change the division of labor between the bankruptcy and district court judges precisely because Pierce Marshall was not contesting the idea that bankruptcy judges would still be able to enter proposed findings of facts and conclusions of law. Roberts No, it may be because the particular claim at issue in Stern was one that wasn't expected to arise in the normal course in bankruptcy proceedings. Gannon Well, that may be something the Court was thinking. In that particular paragraph, the Court mentioned the fact that the Pierce Marshall was not contesting the district court's ability to take proposed findings of fact and conclusions of law. And as Mr. Patel already observed, many district courts have already taken this action in response to Stern. In the appendix to our brief at pages 15a to 17a, we list 25 of those districts. Since our brief was filed, two more districts have adopted similar provisions in Rhode Island and in New Hampshire. And we think that that is telling. I also think with respect to the underlying constitutional claim, if I could elaborate a little bit on what my colleague was saying in response to the questions from the Chief Justice about instances in which Article III judges may indeed delegate the ability to enter certain decisions with which the district court's subsequent ability to over to look over that decision will be cabined by the action that has happened with the consent of the parties. My friend was talking about the Hecker's case. That was one in which the order of reference specifically provided that judgment would be entered in conformity with the referee's report, quote, as if the cause had been heard before the court. And so that was one where the district court didn't come into it at that point, because the judge wasn't there. Roberts Your position is, I mean, the authority to decide cases, which is our constitutional birthright. We said in Stern that Congress can't take that away from us. And your position is that two parties who come in off the street, if they agree, they can take that away from us. Depending. I think that under the circumstances here, and this Court has repeatedly in the context of considering Article III objections in bankruptcy, it is repeatedly recognized that the absence of consent is relevant. Under Schor, the Court is obliged, I think, to look into all the circumstances surrounding this. And there are lots of things that make this far from the hypothetical that you pose, because this is more like the magistrate-judge scheme. And indeed, in some ways, it's slightly more limited. This is an instance where bankruptcy judges are not just somebody off the street that a district court is choosing to decide. Roberts It's not the parties who are choosing to decide. You say that it's the consent of the parties that allows a proceeding we have determined to be unconstitutional to go forward. You determined that it was unconstitutional in the absence of consent, and it's not just the consent of the parties. I think it is important here, as it was in the magistrate-judge context in Rowell, in Peretz, in Gomez, this Court has previously recognized that in the magistrate-judge context, consent makes or breaks the difference between whether it's okay for a magistrate judge to oversee felony voir dire, and it has subsequently compared that to entry of civil judgment. In Rowell, it sustained the ability of a magistrate judge to enter civil judgment. Here, bankruptcy judges are not just people off the street chosen by the parties. They are people who are appointed by Article III judges. They are removable only by Article III judges. They never get a case. Roberts The point of everything that you said, they do not comply with Article III. They themselves are not Article III judges. That is certainly true. But they never get a case unless it is referred to them by an Article III judge. And then the Article III judge reserves the ability to withdraw the reference. And therefore, they don't have to do anything without that imprimatur from the district court. And I think the district court has that authority after the entry of judgment. I don't think as a statutory matter that 157d, which is the provision that allows the district court to withdraw the reference, it's possible that that can't be done at that point. But I think that it is sensible as a matter of constitutional remedy if the entry of final judgment by the Bankruptcy Court was a constitutional violation. I think it is a sensible remedy, as I discussed before, to deem that final judgment to be proposed findings of fact and conclusions of law. This Court concluded in Stern that subject matter jurisdiction is vested in the district court and that the allocation of authority between bankruptcy judges and district judges contained in Section 157 is not of subject matter jurisdictional consequences. Kagan, could you say a word about the relevance of arbitration here? Because I've been trying to figure out if there's an Article III problem, irrespective of consent, when Congress adopts some kind of scheme for alternative adjudication, why schemes of mediation and arbitration wouldn't similarly be constitutionally problematic? I — I — obviously, we don't think that — that these schemes here in the bankruptcy judge context and the magistrate judge context, which are — which are hedged around with lots of procedural protections and statutory protections, rise to that level. But I do think that the principal difference, if the Court were looking to distinguish arbitration from these types of concerns, is that the arbitration is more purely private. Although there's statutory authorization, the arbitrators are generally not Federal employees. Bankruptcy judges, by contrast, are actually units of the district courts. They are within Article III. They are— Kagan, I mean, that would suggest that arbitration is more constitutionally problematic because it — it extends, you know, it goes — it's further away from the supervisory authority of the district court. I'm — I'm loathe to say that it's further away because I think that there may be a separation of powers distinction between Congress taking— Arbitration is a matter of contract between two parties. Nothing happens in an arbitration until you get a district court to enter a judgment enforcing the contract. It seems to me totally different from the situation we're talking about here. Well, I do— A matter of contract versus a matter of consent? I guess I don't understand the difference. I'm posing a question to you, I guess. Courts enforce contracts all the time. They don't enter judgments beyond their Article III authority simply because the two parties before them agree that they should. That's true, Mr. Chief Justice. In cases like Hecker's and Kimberley, courts, in light of a previous reference from the court and the consent of the parties, agreed to have their power of de novo review limited. Obviously, that's not what would happen here, but we think that the judgment of the decision below should be affirmed. Thank you, counsel. Mr. Hallward-Dremar, you have 5 minutes. Thank you, Mr. Chief Justice. I have four points in response. First, with respect to the history, Hecker's and Kimberley were not instances in which the non-Article III actor entered the judgment of the United States. In Hecker's, the Court compared the referee's action to akin to a jury, and a jury, of course, only finds facts. Only the court can decide whether to enter judgment on the basis of the jury's verdict. Likewise, an arbitrator can decide facts pursuant to the party's contract, but until they bring it to the court and judgment is entered confirming that the jury has entered the judgment. Breyer, what are we supposed to assume here on this point? In Thomas, this Court held that what Northern Pipeline establishes is that Congress cannot vest in a non-Article III court the power to adjudicate without consent of the litigants. So that's the holding. Now, if we're going to go back into Crowell and Benson and the power of agencies and whether we want to reverse the things that were held in 1938 and so forth, I guess we should have briefing on that. Am I supposed to assume that this is a case – I thought I assumed what we've held before in respect to constitutionality, not whether Northern Pipeline extends to where it is with consent of the parties? Although Northern Pipeline, because the party had objective, did not address the question whether consent could occur. And now you've read – you've heard what I read from Thomas. I was just reading it. And he talked about without consent. So what I want to know is are we going to open up these issues again? Because I have my own views on that, though they don't necessarily – won't necessarily command a majority, but I think we should have briefing. No, Your Honor, because the earlier cases do not establish an authority to enter judgment of the United States by a non-constitution. My question is, are we supposed to go into that? Or do we just take as assumed what Thomas said and Stern said, and I think – you know what I said. I don't want to repeat myself. Well, Thomas certainly does not foreclose the argument that I'm making, because it wasn't addressed. They didn't say that it's okay with without consent. They just say it's okay with consent. They didn't address the point. That's right, Your Honor. Didn't address the point. It's right, but I think we should have briefing on the point if we're going into it. And Kimberly, again, was – referred to the confirmation of the award, again, the judgment being entered by the court. The – in Rowell, which really marks the furthest extent of the recognition of consent and the role that it can play with respect to judgments, and of course, the Article III argument was not advanced by the parties there. Both parties agreed that consent would be sufficient. But significantly, even in Rowell, the Court said that the consent would have to be knowing and voluntary consent. And we have the opposite of that here, because both the legislature and the judiciary had told EBIA that it had no right to an Article III judge for pretrial motions. And although my friend – Sotomayor, you had an outstanding motion to withdraw the reference, and the district court gave you the option of proceeding with that motion and having it determine the rest of the case, or to go and listen – or go back to the bankruptcy court and let the bankruptcy court manage this, and you chose the latter. I think, obviously, for the reasons your adversary speaks about, because your co-defendant had won in bankruptcy court, I think you were riding your chances. No, Your Honor, to the contrary, and we don't need to hypothesize, because the record is clear. The motion was to withdraw for purpose of conducting a jury trial, because our client recognized that Ninth Circuit precedent, HealthCentral.com, explicitly held after Gran Financiera that although you might have a Seventh Amendment jury trial right to an Article III judge, that did not entitle you to Article III determination of pretrial motions, including summary judgment motion on a fraudulent conveyance claim. It was directly on point. Our client cited that, recognized that it had no right to Article III court prior to trial, so the motion to withdraw was limited to the motion for a trial if the court got that far. So the suggestion that in the answer we disputed that fraudulent conveyance actions are core is not consistent with the record. The complaint had listed eight causes of action, several of which were core, several non-core, and then a single concluding allegation that the proceeding was core. Under Ninth Circuit law, we rightly denied that allegation. Roberts. Thank you, counsel. Counsel, the case is submitted.